**ORIGINAL**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

U.S. DIST. COURT CLERK
EAST DIST. MICH.
FLINT

2005 JUN -7  A 9 50

TIMOTHY LAWRENCE-RODRIGUEZ,

      Plaintiff,

**FILED**

vs.

      CIVIL NO.: 04-CV-71809-DT

COMMISSIONER OF
SOCIAL SECURITY,

      HON. GERALD E. ROSEN
      MAG. JUDGE WALLACE CAPEL, JR.

      Defendant.

_____/

## REPORT AND RECOMMENDATION

### I.    RECOMMENDATION

It is recommended that the Court grant Defendant's Motion for Summary Judgment and enter judgment for Defendant.

### II.    REPORT

This is an action for judicial review of the Defendant Commissioner's final decision denying Plaintiff's application for disability insurance benefits. Plaintiff protectively filed for benefits on April 19, 2001,[1] due to "[b]ipolar II disorder with major depressive episodes[,] social phobia[,] and attention deficit/hyperactivity disorder." (TR 47-50, 61). Benefits were denied initially on December 20, 2001. (TR 29-34). A de novo hearing was held on May 12, 2003, before Administrative Law Judge [ALJ] Regina Sobrino. (TR 558-607). In a decision dated September 19, 2003, the ALJ found that Plaintiff could perform his past relevant work. (TR 18-24). Accordingly,

---

[1]When Plaintiff filed for DIB, he asserted that he was first diagnosed February 19, 2001, but stated that "in [his] opinion," the onset was over thirty years ago. (TR 47, 61).

1

Plaintiff was found not disabled. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied review on June 9, 2004.[2] (TR 6-10). The Plaintiff commenced this action for judicial review.

### A.   MAY 12, 2003, TESTIMONY

#### 1.   Plaintiff's Testimony

Plaintiff testified that he resides at 2717 Foster Avenue in Ann Arbor, in a two story house, with his wife Barbara. (TR 562-63). He stated that he climbs stairs to get to his bedroom. (TR 563).

Plaintiff testified that he was born on April 2, 1952, and was fifty-one at the time of the hearing. Id. He stated that he has a Bachelor's of Science in Accounting. Id. He stated that he last worked March 30, 2001, when he was fired and is not currently employed. (TR 563-64). He explained that he was fired for insubordination, which he believes was based on a reaction due to his "social phobia and feeling like [he] was being jeopardized here and [his] job was being taken away unjustly." (TR 564-65). He stated that he has looked for another accounting job, but has not been interviewed or contacted by any employers, except to tell him that the job was filled. (TR 565). He later stated that he does not think he could do any jobs, even simple jobs, because he would have to deal with people. (TR 580-81).

He stated that he was diagnosed and officially became disabled on February 19, 2001, by Marion Carl. (TR 563). He stated that he started thinking that he needed help due to the problems that he was having at work and then someone referred him to Dr. Carl. (TR 574-75). He stated that he is unable to work because he cannot interact appropriately "with supervisors, particularly and fellow employees." (TR 565). He stated that he is judgmental and fearful of people, as well as defensive. Id.

---

[2]Initially, the Appeals Council denied review on March 26, 2004 (TR 11-14), but reopened the case to consider new evidence. (TR 6-10). However, the Appeals Council again denied review, thus June 9, 2004, was the date the Commissioner's decision became final for purposes of review. Id.

He stated that he was "written up" several times while working for Washtenaw County and that he has been fired from that job and others due to his bipolar disorder and social phobia. (TR 566). He stated that he tried to overcome these disabilities while working at the county, but was unable to. Id. He explained that he avoided phone calls at work and preferred to communicate in letters or email to avoid contact with people. Id. He stated that he worked for the county for about fourteen years, but in "three different divisions or departments." (TR 567). He stated that he had the following problems in each department: punctuality, reprimands, insubordination, conflicts, inability to get along with people, threats, and arguments. (TR 568).

Plaintiff also testified that he has back problems and has been seeing a chiropractor for nine years. Id. He also related various back injuries. Id. However, he stated that the back problems "don't prevent [him] from going to a job." (TR 568, 569). He did mention that his back causes some limitations in terms of lifting, bending, and reaching. (TR 569). He stated that he does not have any difficulty walking or standing and can sit for an hour or two at a time. Id. However, he stated that when he sits that long he sometimes had to use a pillow for his back. Id. He also stated that he sleeps with a contour pillow, which alleviates pain in his neck and shoulders. Id.

Plaintiff testified that he does not have difficulty holding a pen or pencil or picking up small objects. Id. He stated that he has difficulty climbing stairs because of a torn ACL and subsequent knee surgery in 1991 as well as his back. (TR 570). He stated that climbing a few stairs is not a problem, but a whole flight of stairs would be difficult. Id.

Plaintiff testified that he has been taking Neurontin since 2001 when it was originally prescribed by Dr. Meadows. (TR 570-71). He stated that he is currently taking the drug prescribed by Dr. Victoria Serbia for his bipolar and social phobia, who increased his dosage from 1600 to 1800 milligrams. (TR

3

571). He also reported that he has been taking Synthroid since 1989, which keeps his thyroid under control. (TR 571-72). Additionally, he reported that he takes Prilosec for his acid reflux. (TR 572). He stated that although he has some drowsiness with the Neurontin, as well as dry mouth, he is "very, very satisfied with all [his] medications." Id. He stated that he has not stayed in the hospital overnight or been to the emergency room since 2001, with the exception of an emergency room visit in late 2001 when his finger was infected. Id.

Plaintiff testified that his wife does most of the chores, but he shares some of the work, such as yard work and he does the cooking. (TR 573). He stated that he trims the weeds and his wife cuts all the grass. (TR 574). He also stated that he does the grocery shopping once a week usually in the early morning to avoid people.[3] (TR 573, 576-77). However, he stated that he is very anxious while he is there. (TR 576). He stated that he never shops on a Saturday or Sunday because it is too busy. (TR 577). Additionally, he stated that he has a pet dutch bunny. (TR 573). He stated that he does not belong to any organizations or clubs. Id. He stated that he enjoys the following hobbies: playing with his bunny, watching television, playing Sega video games, and exercising. (TR 577). He stated he does modified push-ups (on his knees), leg lifts, walking, stretching, and isometrics. (TR 574). He stated that he drives to Kroger and Meijer to buy the groceries and also drove himself to the hearing. Id.

---

[3]He explained that he had a confrontation with a man who was too close to his wife in line behind them and so he asked him, "pardon me sir, would you mind backing up a little, you're so close to my wife." (TR 577). He stated in another situation he was at Meijer and a guy stated that he thought he knew Plaintiff, and this upset him because he thought he was judging him. (TR 577-78). He stated that he fears the police will be called if he has a confrontation when he is shopping. (TR 577). Although, the police have never been called when he is shopping, he testified that the police were called once because he called a woman a "bitch," on a phone answering machine following a security deposit dispute at his prior apartment complex. (TR 579-80).

He also stated that he does not visit friends or family, nor do they visit him "by [his] own choice." (TR 573). He stated that he is estranged from his family because he is the "black sheep" and ostracized by his family. (TR 583). He explained that he is estranged from his wife's stepsons because they did not accept him and he holds grudges against them for treating him badly and calling him names. (TR 583-84). He also reported that he is estranged from her ex-husband. (TR 583). However, he stated that his relationship is "a little better" with her brothers and father, who live in Arizona and initially did not approve of their marriage. Id.

### 2.   Plaintiff's Wife, Barbara Lawrence-Rodriguez's Testimony

Plaintiff's wife, Barbara, testified at the hearing. (TR 585-90). She testified that Plaintiff is always on guard that someone is going to do or say something that will result in a fight. (TR 585). She stated that this distracts him and she has to do all the talking when they go out. Id. She explained that he thinks the whole world is out to get him, unless they are "really, really, really nice." Id. She stated that he cannot work because he is like this, even with her. (TR 586).

She stated that he is argumentative. Id. She stated that they currently have a contractor remodeling their home, but she does most of the talking with the contractor. Id. She stated that Plaintiff has had contact with the contractor and other people working on their home. (TR 586-87). She stated that he took over talking to a woman who was installing the cabinets and there was no incident, except that Plaintiff's wife got mad and went to sit in the car. (TR 587). She testified that none of the contractors left due to contact with Plaintiff. Id.

She stated that she sees the relationship between Plaintiff and his stepsons as the biggest problem she has with her husband. (TR 587-88). She stated that she thinks that the restraining order that Plaintiff has against his stepson is unreasonable, but she also stated that Plaintiff was justified in being fearful of her son, who is also bipolar. (TR 589).

5

**B.    MEDICAL EVIDENCE**

Examinations of the parties' cross-motions for summary judgment reveal that an additional recitation of the Plaintiff's medical evidence would be repetitive. The pertinent record medical evidence relied upon by this Court is fully articulated in the Analysis.[4]

**C.    VOCATIONAL EXPERT'S TESTIMONY**

Judith Findora, a vocational expert [VE], testified at the hearing. (TR 590-604). The VE stated that Plaintiff's past work as described by him was medium and light, but generally accounting positions are classified as sedentary. (TR 591). The ALJ presented a hypothetical question to the VE in which a claimant with Plaintiff's age, education, and work experience and assuming he

> is limited to standing, walking, six of eight hours in an eight hour workday. The individual can sit for six of eight hours, in increments of one hour. And by that I mean the individual should have the opportunity to change positions for a few minutes after sitting for one hour. The individual is able to lift, carry, push or pull as many as 50 pounds occasionally, and 25 pounds frequently. Assume that the individual can occasionally stoop, balance, climb stairs. The individual should not climb ladders, ropes, or scaffolds, or crawl. The individual should not perform work that involves operating right knee or foot controls. The individual can rarely crouch or kneel. Assume that the individual can tolerate no more than superficial contact with co-workers or supervisors. The individual cannot perform work that involves dealing with the general public.

(TR 591-92). The VE stated that such a claimant could perform Plaintiff's past relevant work. (TR 592). The ALJ asked the VE to assume the following further limitations:

> limited to performing work that can be done in relative isolation and I know relative is relative, but is limited - - I'm thinking of work that is - - can be done without relying on a co-worker to complete a task. Perhaps a co-worker could bring files or bring information [sic] there could be a transfer of information, but the individual would not have to work in tandem with any co-workers to get the work tasks done.

---

[4]See Subpart E, *supra*.

(TR 592-93).  The VE stated that these additional limitations would not generally affect Plaintiff's ability to do his past relevant work; however, occasionally he might have to do an assignment in tandem with another. (TR 593). The ALJ asked the VE what it meant to assume a job is low stress. Id. The VE stated that "it would deal with independent judgment exercised, amount of authority on the job." Id. The VE explained that she usually rates independent judgment on a scale of one to five with five being the most independent. Id. The Plaintiff's jobs were rated at a three to a four in independent judgment. Id.

Plaintiff's attorney asked the VE whether a claimant that could only do low stress work, could do Plaintiff's past work. (TR 594). The VE stated that he could not. Id. The ALJ then asked the VE to assume low stress work and whether any of Plaintiff's skills would be transferable with that limitation. Id. The VE stated that Plaintiff's possessed computer literacy is a skill, but not transferable. Id. However, the VE explained that such a claimant would be capable of a low stress job, such as data entry with one or two steps. Id.

The ALJ then asked whether Plaintiff would be capable of other work. (TR 594-95). The VE identified the following positions:  sedentary and semi-skilled, data entry clerk, 10,000 positions; medium, machine operator, 30,000 positions; assembly, 10,000 positions; janitorial, 50,000 positions; light, machine operator, 35,000 positions; assembly, 30,000; and housekeeping, 10,000 positions. (TR 595). The VE stated that these positions would require the claimant to "report to somebody, there wouldn't be somebody actively supervising and [sic] even an occasional manner. . . But there would not be a supervision where somebody is actually standing and watching you. (TR 595-96). The VE testified that the medium and light exertion positions were classified as simple and routine. (TR 596).

7

Plaintiff's counsel then questioned the VE regarding the level of independence in the aforementioned positions. Id. The VE stated that "[t]he job itself is independent," but that it is probable that a supervisor would check daily to make sure the work was done correctly. (TR 596-97). Plaintiff's counsel asked whether someone who could not tolerate that kind of supervision would be able to work. Id. The VE stated that all of the previously listed occupations would be precluded by such a limitation. Id. Plaintiff's counsel then asked whether a moderate limitation as listed on Plaintiff's mental residual functional capacity [RFC] meaning that he was able to perform a certain activity only fifty percent of the day, would preclude employment. (TR 597-99). The VE indicated that it would. (TR 599). The VE testified that a claimant would have to be able to sustain a given activity seventy-five percent of the time to maintain employment. Id.

The VE testified that Plaintiff would only have contact with their supervisor, as an accountant once a week to once a month. (TR 600). Plaintiff disagreed and stated that he worked as a team and had regular contact with supervisors and co-workers when he was employed with Washtenaw County as an accountant. (TR 600-03). The VE stated that according to the ALJ's second hypothetical, as the jobs are typically performed, Plaintiff would be capable of performing them. (TR 603). The VE explained that the situation described by Plaintiff in his past relevant work was unusual and that as described would not be compatible with the limitation in the ALJ's second hypothetical. Id. However, the VE stated that the positions of machine operator, assembler, janitorial housekeeper, and data entry were compatible with the limitations in the ALJ's second hypothetical. Id. Again, the VE affirmed that all of these positions "require the ability to tolerate a supervisor [] who may and probably will check on work once a day." (TR 604).

8

**D.     ALJ'S CONCLUSIONS**

After reviewing the testimony presented at the hearing and the medical evidence in the record, the ALJ found that claimant has a "depressive disorder, an anxiety related disorder, and a personality disorder." (TR 20, 23). However, the ALJ found that he does not have an impairment either alone or in combination, sufficiently severe to meet or medically equal the criteria of any condition in the Medical Listings in Appendix 1, Subpart P, Regulations No. 4. Id. The ALJ found Plaintiff not to be fully credible. Id. Thus, he determined that Plaintiff had the RFC to perform the following jobs: machine operator, assembler, janitorial worker, and housekeeper. (TR 22, 23). Therefore, the ALJ concluded that Plaintiff is not eligible for disability. (TR 22-24).

**E.     ANALYSIS**

Plaintiff advances several claims in his Motion for Summary Judgment. His Motion argues that the ALJ's decision is not supported by substantial record evidence because: (1) he meets the following Listings: 12.04, 12.06, 12.08; (2) the ALJ and Appeals Council engaged in prejudicial bias against him; (3) he asserts that he would never be hired due to his age and work history; (4) the ALJ improperly analyzed his back problems; and (5) the positions identified by the VE require substantial contact with other people.[5]  In response, Defendant's Motion for Summary Judgment contends that the ALJ's

---

[5]Plaintiff's Motion for Summary Judgment and Brief filed August 9, 2004 (hereinafter "Plaintiff's Brief"). The pages of Plaintiff's Motion and Brief are not numbered, thus, pages will be referred to in quotes, with the first number of the document numbered "1."

decision is supported by substantial evidence.[6]  Plaintiff responded to Defendant's Brief on October 19, 2004, and also asked for the Defendant's Motion and Brief to be Stricken.[7]

Additionally, on October 12, 2004, Judge Gerald E. Rosen Sustained in Part and Overruled in Part Plaintiff's September 21, 2004, Objections to the undersigned's September 15, 2004, Order regarding Plaintiff's request to supplement the record in this case with new evidence. Judge Rosen held that Plaintiff should be given the opportunity "to make the showings of 'materiality' and 'good cause' that would justify a remand for consideration of this new evidence."

On October 25, 2004, Plaintiff was given this opportunity in a Scheduling Order, pursuant to Judge Rosen's October 12, 2004, Order.  On November 1, 2004, Plaintiff took that opportunity and filed a Motion to Determine Whether a Remand is Necessary to Include New Evidence into the Record.[8] Defendant filed a Response to Plaintiff's Motion for Remand on November 15, 2004.[9]  The matter is now ready for decision.

---

[6]Defendant's Motion for Summary Judgment and Brief filed October 12, 2004 (hereinafter "Defendant's Brief"), at pages 6-9.

[7]Plaintiff's Motion Requesting the Court to Strike From the Record Defendant's Motion for Summary Judgment and Plaintiff's Response to Defendant's Motion for Summary Judgment, filed October 19, 2004 (hereinafter "Plaintiff's Response"). See Subpart E, subsection a., supra at pages 11-12 for discussion regarding Plaintiff's Motion to Strike. Again, the pages of Plaintiff's Motion and Brief are not numbered, thus, pages will be referred to in quotes, with the first number of the document numbered "1."

[8]Plaintiff's Motion to Determine Whether a Remand is Necessary to Include New Evidence into the Record, filed November 1, 2004 (hereinafter "Plaintiff's Remand Motion").  Again, the pages of Plaintiff's Motion are not numbered, thus, pages will be referred to in quotes, with the first number of the document numbered "1."

[9]Defendant's Response to Plaintiff's Motion for Remand filed November 15, 2004 (hereinafter "Defendant's Response"). The pages of Defendant's Response are not numbered, thus, pages will be referred to in quotes, with the first number of the document numbered "1."

10

1. **Standard of Review**

This Court's review of the ALJ's conclusions is limited. The findings of the ALJ regarding Plaintiff's disabled status are conclusive if supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g) (1997). Substantial evidence means such evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971). It is more than a scintilla of evidence, but less than a preponderance of evidence. Brainard v. Sec'y of Health and Human Servs., 889 F.2d 679, 681 (6th Cir. 1989).

This standard presupposes that there is a "zone of choice" within which the ALJ may make a decision without being reversed. Felisky v. Bowen, 35 F.3d 1027, 1035 (6th Cir. 1994). Even if the court might arrive at a different conclusion, an administrative decision must be affirmed if it is supported by substantial evidence. Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986). Finally, consideration of the whole record does not mean that the ALJ must mention or comment on each piece of evidence submitted. Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998); see also Thacker v. Comm'r of Soc. Sec., 99 Fed.Appx. 661, 665 (6th Cir. 2004) (unpublished). Applying these standards, I will analyze each of Plaintiff's claims.

a. **Motion to Strike**

On October 19, 2004, Plaintiff filed a Motion Requesting the Court to Strike from the Record Defendant's Motion for Summary Judgement (hereinafter "Plaintiff's Request"). On September 10, 2004, the Court granted Defendant's Ex Parte Motion to Extend Time to File Motion for Summary Judgement, and Ordered Defendant to file its Summary Judgement Motion by October 10, 2004, and Plaintiff to file any Response by October 17, 2004. Plaintiff argues that because Defendant's Motion for Summary Judgement was filed on October 12, 2004, it was late and should be stricken. Plaintiff argues that Defendant filed same late to reduce the amount of time that Plaintiff would have to respond.

11

In fact, Plaintiff's Response was not filed until October 19, 2004. Therefore, Plaintiff still took the seven days that the September 10, 2004, Order allowed him to respond, and he has shown no other reason for the Court to disregard and strike Defendant's Motion. The undersigned will consider both the Defendant's Motion and the Plaintiff's Response, although both were filed two days past the dates set forth in the September 10, 2004, Order in forming this Report and Recommendation.

### b.    Additional Evidence

Plaintiff's Motion must show that the additional evidence is new, good cause for why the proposed new evidence was not timely filed, and how it is material. Cline v. Comm'r. of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Snider v. Comm'r of Soc. Sec., 328 F.Supp.2d 703, 709-10 (E.D. Mich. 2004). Plaintiff alleges that the evidence is material because it shows his "maladaptive behavior" indicates how he would interact with co-workers, and establishes that he has a Personality Disorder that meets Listing 12.08 of the Regulations.[10] "In order for the claimant to satisfy his burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." Sizemore v. Sec'y of Health and Human Servs., 865 F.2d 709, 711 (6th Cir.1988) (citing Carroll v. Califano, 619 F.2d 1157, 1162 (6th Cir.1980)). As Defendant points out, there was already "numerous references to Plaintiff's workplace and social difficulties" in the record before the ALJ;[11] therefore, his additional material was cumulative and not material. Young v. Sec'y of Health and Human Servs., 925 F.2d 146,

---

[10]This is essentially a reiteration of Plaintiff's Original Motion (letter) to Include Additional Material into the Administrative Record, filed September 15, 2004. As Judge Rosen's October 12, 2004, Order stated, "Plaintiff's present objections and his letter to the Magistrate Judge fall well short of this requisite showing," as required under Cline, 96 F.3d at 148-49; Snider, 328 F.Supp.2d at 709-10.

[11]Defendant's Response at page "3."

149 (6th Cir. 1990).[12]   Therefore, there is no reason to think that the ALJ would have come to a different conclusion had the evidence in dispute been before her.

He also fails to show good cause as to why they were not included earlier.  In fact, he suggested that Defendant should have included the documents in the record.[13]  "A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ."  Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001) (citing Willis v. Sec'y of Health & Human Servs., 727 F.2d 551, 554 (1984) (per curiam).

Additionally, as Defendant points out, Plaintiff has failed to establish "newness" pursuant to Finkelstein v. Sullivan, 496 U.S. 617, 626 (1990) (A sixth sentence remand is only "appropriate when the district court learns of evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of that proceeding."); Abbott v. Sullivan, 905 F.2d 918, 925 n.5 (6th Cir. 1990).[14]  Plaintiff's Motion clearly fails to show any "newness."  Further, he states that he does not want a remand because this could "push [his] case back another two years."[15]

---

[12]Defendant also points out that there are portions of Plaintiff's proffered evidence that are "outside scope of [the Court's] inquiry" as it is dated *after* the ALJ's decision and thus immaterial. Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230,1233 (6th Cir. 1993).

[13]Plaintiff's Remand Motion at pages "1"-"2."

[14]Defendant's Response at page "2."

[15]Plaintiff states that he "certainly desires" for the information to be included in the Administrative Record and reviewed by this Court; and would only entertain "a remand if he did not have to personally appear in court and if the remand related ONLY to whether Exhibits 114, 115, 116, 117, 118, 119, and the letter to the Appeals Council dated February 23, 2004, are entered into the Administrative Record."  Plaintiff's Remand Motion at page "2."

Plaintiff has failed to show "newness," "materiality," or "good cause." The absence of any one of these requirements would be sufficient for a denial of his Motion. <u>Cline</u>, 96 F.3d at 148; <u>Snider</u>, 328 F.Supp.2d at 709-10.

### c.    Medical Listings

Plaintiff alleges that he should have been determined disabled at step three because he meets Medical Listings 12.04, 12.06, and 12.08. In order to satisfy a Medical Listing, Plaintiff must first show that he meets a clinical finding under paragraph A of each Listings, then he must show at least two of the following restrictions under paragraph B:[16]

> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or
> 4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

20 C.F.R. Part 404, Subpart P, App. 1.

Although Plaintiff has been diagnosed with bipolar disorder, social phobia, and an anxiety disorder by several medical sources, the ALJ recognized this. (TR 20, 23). However, even if Plaintiff satisfied paragraph A of each of the aforementioned Listings with these diagnoses, he nevertheless fails to meet paragraph B of same. The evidence of record established that Plaintiff has difficulty in maintaining social functioning. In fact, the ALJ acknowledges that his limitations in this area are

---

[16]The criteria in paragraph B for each of the alleged listings is identical under 20 C.F.R. Part 404, Subpart P, App. 1. <u>Buress v. Sec'y of Health and Human Servs.</u>, 835 F.2d 139, 141 (6th Cir. 1987).

14

"marked."[17]   (TR 21).   This was also established in Plaintiff's Psychiatric Review Technique Form [PRTF], on September 17, 2001, by Dr. Ray Creager.   (TR 194).   However, Plaintiff fails to establish any of the three additional restrictions under paragraph B.

Plaintiff argues that according to an Evaluation Form for Affective Disorders and Anxiety Related Disorders, completed by Stacy Buehler on July 20, 2003, he has marked limitations in more than social functioning alone.[18]   (TR 278-86).   This Court is well aware that the medical opinions and diagnoses of treating physicians are entitled to substantial deference, particularly if those opinions are uncontradicted.[19]   King v. Heckler, 742 F.2d 968, 974 (6th Cir. 1984).   However, an ALJ may reject a physician's opinion when it is brief, conclusory, or not supported by medically acceptable clinical or laboratory diagnosis techniques.   20 C.F.R. § 404.1527(d)(2).   Accordingly, treating physicians' opinions must be grounded on objective medical evidence, and no deference need be afforded those opinions if they are simply conclusory.   Houston v. Sec'y of Health and Human

---

[17]Plaintiff notes that the ALJ stated that "the claimant is able to tolerate contact with staff at a fitness center he attends."   (TR 21).   However, as Plaintiff testified and explained in his brief, this was a fitness facility at an apartment complex and he avoided going there when other people were exercising.   There is no evidence to indicate that the center was staffed or that Plaintiff had contact with the staff; however, the ALJ nevertheless found Plaintiff had marked limitations in social functioning.   Id.   Therefore, any error in this regard is harmless.

[18]Plaintiff's Response at pages "4"-"5."

[19]Stacy Buehler is Plaintiff's therapist.   In her July 2003 letter, she refers to herself as an Intern Counselor.   She is supervised by a certified social worker with a masters degree in social work, Alexandra Cooper. (TR 286, 288).   Although, her credentials are unclear, the ALJ considered her opinion, and under 20 C.F.R. § 1513(c), she would be able to provide additional evidence regarding Plaintiff's ability to work.   Boyett v. Apfel, 8 Fed.Appx. 429, 433, 2001 WL 467982, *4 (6th Cir. 2001).   Although her opinion would not likely be due the deference a treating physician, the standard is applied above to demonstrate that even if she were such, her opinion is not entitled to deference due to its conclusory nature.

Servs., 736 F.2d 365, 367 (6th Cir. 1984); Duncan v. Sec'y of Health and Human Servs., 801 F.2d 847, 855 (6th Cir. 1986)(citing King, 742 F.2d at 973).

Stacy Buehler does indicate on the form that Plaintiff has marked restrictions in activities and in maintaining concentration, persistence, or pace, as well as the established marked restrictions in social functioning. (TR 278-79). Ms. Buehler indicated that Plaintiff has never experienced repeated episodes of decompensation. (TR 278-79, 285). However, she indicated that Plaintiff's daily activities are markedly or extremely limited in terms of ability to shop, use the telephone, and plan daily activities, without further explanation. (TR 283). Plaintiff testified that he avoided using the telephone and reported that he shops once a week, usually in the early morning to avoid people. (TR 566, 573, 576-77). The treatment notes also indicate that Plaintiff's therapist went to the store with him in July 2003, and although Plaintiff reported feeling vulnerable, it states that he "removed himself from an anxious event successfully."[20] (TR 277). Further, the only limitation in maintaining concentration that she indicated was an "[in]ability to sustain tasks without undue interruptions or distractions," without further explanation. (TR 284).

As the ALJ stated:

[t]he record as a whole supports the conclusion that the claimant's activities of daily living are mildly impaired. He shares household chores with his wife, is able to take care of his personal needs, does some yard work, plays video games, takes care of his rabbit, exercises, goes grocery shopping, and is a licensed driver. His ability to maintain social functioning is markedly impaired as the result of social phobia, discussed in detail above. The claimant's functioning in the area of concentration, persistence or pace is mildly to moderately impaired. The claimant reads the Bible and the newspaper, surfs the Internet, communicates by email, watches movies and plays video games. There is no evidence of extended episodes of decompensation. The

---

[20]After the ALJ's decision, Plaintiff's therapist again went to the store with him, where he "had the courage to ask the workers questions," although he made an unacceptable gesture at one man. (TR 319). However, this was additional information as stated that was not before the ALJ. See Subpart E, subsection b., infra at pages 12-14.

claimant does not have a disease process that results in such marginal adjustment that even a minimal increase in mental demands or change in environment would be predicted to cause him to decompensate. He does not have a history of one or more years' inability to function outside of a highly supportive living arrangement.

(TR 21).

The ALJ's findings are supported by the record, including Plaintiff's Mental RFC and PRTF in September and December of 2001, (TR 184-201, 222-40), his reported daily activities[21] (TR 90-92, 109-112, 125-27), and his own testimony (TR 573-77). Thus, the ALJ's findings were supported by substantial evidence in this regard.

### d.    Alleged Bias by ALJ and Appeals Council

Plaintiff alleges that "[i]t is [his] sincere belief that Judge Regina Sobrino, the [ALJ] at the hearing on May 12, 2003, engaged in prejudicial bias against [him], in order to weaken [his] case and help Social Security gain the upper hand."[22] He also makes the same allegations regarding the Appeals Council.[23] There is no evidence to support Plaintiff's contentions; rather, as stated within this Report and Recommendation, the ALJ's decision was in fact supported by substantial evidence. Accordingly, the Court will not tolerate such unfounded accusations against judicial officers and agencies. In

---

[21]It is noted that Plaintiff was assessed a GAF of 23 by his therapist in July 2003 (TR 287-88). However, as the ALJ noted, the therapist stated, "I do not believe that Mr. Rodriguez needs to be hospitalized with this low of a GAF rating. Here at The Women's Center Of America we set out GAF scale rating low to allow room to grown and excel in therapy." (TR 20-21, 287). The ALJ found that this was inconsistent with treatment notes and the claimant's daily activities. (TR 21). Plaintiff also cites other low GAFs in the low 50s by other medical sources from March 2001 to April 2002; however, the ALJ noted that his GAF score rose to 65 in July 2001 and was 63 in July 2002, "indicating mild symptoms." (TR 20).

[22]Plaintiff's Brief at pages "8"-"12."

[23]Plaintiff's Brief at pages "12"-"13."

17

<u>Howard v. Sec'y of Health and Human Servs.</u>, 932 F.2d 505, 509 (6th Cir. 1991), the Sixth Circuit

articulated its position well:

> This suggestion that bigotry underlay the ALJ's determination that Howard was not
> eligible for benefits, a claim completely unsupported in the record before this court, was
> not well received by this panel and will not be countenanced in the future by this court.
> Counsel are advised that personal aspersions, whether they be cast at opposing counsel
> or members of the judiciary, have no place in argument before us unless they are strictly
> pertinent to a legal issue, such as the imposition of Rule 11 sanctions or claims of
> judicial or prosecutorial misconduct.

### e.   Hiring Potential

Plaintiff alleges that he would not be hired due to his age and history of termination from

various employers in the past.[24] This is not a basis for establishing disability under the regulations.

20 C.F.R. § 404.1566. Section 404.1566 reads in pertinent part:

> (a) General. We consider that work exists in the national economy when it exists in
> significant numbers either in the region where you live or in several other regions of
> the country. It does not matter whether--
> (1) Work exists in the immediate area in which you live;
> (2) A specific job vacancy exists for you; or
> (3) You would be hired if you applied for work.

### f.   Back Problems

In Plaintiff's response, he discusses his history of back problems and a torn anterior cruciate

ligament [ACL] and the ALJ's treatment of same.[25] The ALJ acknowledge his treatment for back and

leg pain. (TR 21). However, Plaintiff's treating chiropractor opined that Plaintiff's problems did not

prevent him from working. (TR 21, 202). She did opine that he might experience discomfort if

required to sit for more than one hour, but the ALJ accommodated this in the RFC. (TR 21, 22, 202).

---

[24]Plaintiff's Brief at page "15." Plaintiff's Response at pages "10"-"11."

[25]Plaintiff's Response at page "10."

Further, Plaintiff himself testified that his back problems do not prevent him from working. (TR 568, 569). Therefore, substantial evidence supported the ALJ's findings.

### g.   Housekeeping Position

Plaintiff alleges that he would be unable to work as a housekeeper because such a position requires too much contact with other people.[26]  Plaintiff also asserts that the positions of janitor, assembler, and machine operator require regular contact with co-workers, based on his prior employment in such positions.[27]  (TR 300-05).  He bases this argument on his own observations; however, the ALJ properly based her finding that Plaintiff could do housekeeping work on the testimony of a vocational expert under 20 C.F.R. §404.1566(c).

Although there is no exact number that qualifies as "significant," the Sixth Circuit has stated that 3,800 is a significant number of jobs under Hall v. Bowen, 837 F.2d 272 (6th Cir.1988) (finding that between 1,350 and 1,800 jobs in the region was sufficient, although there is no "special number").  The ALJ found that there were over 160,000 positions that Plaintiff was capable of performing. (TR 22). Thus, the ALJ carried her burden of finding a significant number of jobs existed. Bradford v. Sec'y of Dept. of Health and Human Servs., 803 F.2d 871, 874 (6th Cir. 1986) ("Once the vocational expert supplies evidence that such jobs are in fact available, this supplies the balance of the substantial evidence necessary to support the ALJ's conclusion.").

---

[26]Plaintiff's Response at page "10."

[27]Plaintiff's Response at page "10."

III.   **CONCLUSION**

For the reasons stated, I find that the ALJ's decision denying Plaintiff benefits is substantially supported in the record. Accordingly, I respectfully recommend that the Court **GRANT** Defendant's Motion for Summary Judgment, and enter judgment for Defendant Commissioner.

Pursuant to Fed.R.Civ.P. 72(b) and 28 U.S.C. § 636(b)(1), the parties are hereby notified that within ten days after being served with a copy of the recommendation they may serve and file specific, written objection within ten days after being served with a copy thereof. The parties are further informed that failure to timely file objections may constitute a waiver of any further right of appeal to the United States Court of Appeals. United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

In accordance with the provisions of Fed.R.Civ.P. 6(b), the court in its discretion, may enlarge the period of time in which to file objections to this report.

Dated: **JUN 07 2005**

WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE

**ORIGINAL**

## CERTIFICATION OF SERVICE

U.S. DIST. COURT CLERK
EAST DIST. MICH.
FLINT

UNITED STATES OF AMERICA )

2005 JUN -7 A 9 50

) ss    Case No.: 04-CV-71809–DT

EASTERN DISTRICT OF MICHIGAN   )

**FILED**

I, the undersigned, hereby certify that I have on the <u>7th</u> day of <u>June 2005</u>, mailed a

copy of the "<u>Report and Recommendation</u>," in the foregoing cause, pursuant to Rule 77(Davenport),

Fed.R.Civ.P., to the following:

Honorable Gerald E. Rosen
United States District Judge
231 W. Lafayette, Room 802
Detroit, Michigan 48226

Janet L. Parker
Assistant United States Attorney
101 First Street, Suite 200
Bay City, Michigan 48708

Timothy Lawrence-Rodriguez
2717 Foster Avenue
Ann Arbor, Michigan 48108

Social Security Administration
Office of the Regional Counsel
200 W. Adams Street, 30th Floor
Chicago, Illinois 60606

Marsha Heinonen
Deputy Clerk